IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| RHONDA LYNN RACKLEY, ) <br> ) <br> Plaintiff, ) <br> ) <br> ) CIV-13-500-M <br> v. ) <br> ) <br> CAROLYN W. COLVIN, ) <br>   Acting Commissioner of Social ) <br>   Security Administration, ) <br> ) <br> Defendant. ) | |

REPORT AND RECOMMENDATION

Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner denying her applications for disability insurance and supplemental security income benefits under Title II and Title XVI of the Social Security Act, 42 U.S.C. §§ 416(I), 423, 1382. Defendant has answered the Complaint and filed the administrative record (hereinafter TR___), and the parties have briefed the issues. The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). For the following reasons, it is recommended that the Commissioner's decision be affirmed.

I. Background

Plaintiff protectively filed her applications for benefits on September 29, 2008, and alleged she was disabled beginning July 7, 2007, due to migraine headaches, brain seizures,

and manic/depressive, or bipolar, disorder.[1] (TR 177-182, 195). She also described difficulty walking and standing for prolonged periods due to joint pain, fatigue, shortness of breath and dizziness, difficulty sitting due to pain and fatigue, limitations in lifting, carrying, repetitive bending, squatting, kneeling, and stair climbing, difficulty using her hands due to numbness, and difficulty with concentration, focus, and memory. (TR 227).

Plaintiff's work history included work as a cashier, office assistant, dental assistant, and filing clerk. (TR 211-216, 262, 264-268). Plaintiff stated she stopped working due to "a nervous breakdown with attempted suicide." (TR 195). Plaintiff was last insured for Title II disability insurance benefits on September 30, 2012. (TR 158).

In a consultative physical examination of Plaintiff conducted in February 2009, the examiner, Dr. O'Hayre, reported that he found no physical impairment or limitations. (TR 442-448). In a consultative psychological evaluation of Plaintiff conducted in February 2009, the examiner, Dr. Danaher, Ph.D., reported that Plaintiff exhibited no memory or concentration deficits. (TR 450-454). The diagnostic impression was bipolar disorder type II, assessed in light of Plaintiff's interview and history of previous bipolar diagnosis in 2007. (TR 453).

Plaintiff's medical record reflects that she was hospitalized for one night in July 2007

---

[1]Plaintiff's applications allege a disability onset date of July 2, 2007, but she also stated she became unable to work on July 7, 2007. (TR 195). The agency determined Plaintiff's alleged disability onset date was either July 2, 2007, or July 7, 2007. (TR 190, 310). However, the ALJ determined that Plaintiff's alleged disability onset date was July 7, 2007. (TR 13). Plaintiff has not taken issue with the ALJ's finding.

after she complained of being depressed, suicidal, and overdosing on medications. (TR 384-385). She related her depressed mood and suicidal thoughts to problems with a boyfriend and to being "off her medications for two months." (TR 385). The treating psychiatrist, Dr. Vad, diagnosed Plaintiff with bipolar disorder, mixed. (TR 386-394). Plaintiff was "stabilized" on medication and discharged to follow up with her treating physician and psychiatrist. (TR 384).

In a consultative psychological evaluation of Plaintiff conducted by Dr. Kates, Ph.D., in October 2007, Dr. Kates noted Plaintiff's statement that she was unable to remember anything from the time of her "nervous breakdown" in July 2007 to the date of the consultative examination, although Plaintiff "seemed to have no problems giving [her] history." (TR 408). Dr. Kates also noted that Plaintiff gave her history at a normal rate of speed but "suddenly became much slower in giving information on the formal mental status evaluation." (TR 409-410). The diagnostic impression was major depressive disorder, recurrent, severe with transient psychotic features, and personality disorder not otherwise specified. (TR 411).

Plaintiff sought emergency room treatment for suicidal ideation in January 2008 that she related to "having problems with her boyfriend" and feeling depressed. (TR 432). However, Plaintiff refused to undergo laboratory testing, stated that she had not been taking her medications, and left the hospital without treatment. (TR 434, 440, 441).

Dr. Calenzani, a psychiatrist, treated Plaintiff for bipolar disorder beginning in September 2006. (TR 404). Dr. Calenzani prescribed medications for Plaintiff without

3

psychotherapy.

Plaintiff reported experiencing "brain seizures" occurring at least two times per month. (TR 219, 408). Plaintiff stated she was being treated by Dr. Sipes for a seizure disorder, but there is no record of treatment of Plaintiff by Dr. Sipes or another physician for seizures. (TR 222, 482). Plaintiff indicated in September 2007 that it was Dr. Merkey who told her she was having "brain seizures." (TR 333). Dr. Merkey's records of treatment of Plaintiff reflect that in April 2005 he reported Plaintiff had on one occasion "experienced a complicated migraine" headache. (TR 351-352).

An agency medical consultant, Dr. Lochner, Ph. D., opined in March 2009 that Plaintiff should not work with the general public and she should be able to handle simple and some complex work-related tasks. (TR 458).

In an administrative hearing conducted in September 2010 before Administrative Law Judge Gatewood ("ALJ"), Plaintiff testified that she last worked in July of 2007 and previously worked as an office assistant and filing clerk. (TR 34-38). Plaintiff stated that her "ability to interact with people, to be out in social events" had worsened and that she felt safer in her apartment "with the doors locked and the blinds closed." (TR 42). Plaintiff's daughter testified that she had quit her job in order to be her mother's "caretaker." (TR 49, 51).

A vocational expert ("VE") also testified at the hearing. Considering Plaintiff's description of her previous jobs, the VE testified that Plaintiff previously worked as a general clerk, dental assistant, and file clerk. (TR 55). In response to hypothetical questioning by the

4

ALJ, which included the limitation of no work with the general public and limited to "simple tasks," the VE testified that the individual could perform Plaintiff's previous jobs of file clerk and general clerk. (TR 55-56).

The ALJ issued a decision in September 2011. Noting that Plaintiff had filed previous applications in 2007 and in 2005, the ALJ found there was no good cause for reopening the prior determinations in these applications. (TR 13). The ALJ further found that Plaintiff was insured for purposes of Title II disability insurance benefits only through September 30, 2012, and that she therefore must establish disability on or before that date in order to receive disability insurance benefits.[2] (TR 14).

The ALJ further found that Plaintiff had a severe impairment due to bipolar disorder. (TR 17). As a result of this impairment, the ALJ found that Plaintiff's residual functional capacity ("RFC") for work was restricted. Drawing on the agency medical consultant's RFC assessment, the ALJ found Plaintiff was unable to work with the public and that she would not be able to perform more than simple and some complex tasks. (TR 19). In connection with the RFC finding, the ALJ expressly considered Plaintiff's subjective statements and her daughter's subjective statements concerning Plaintiff's symptoms. The ALJ determined for reasons stated in the decision that Plaintiff's and her daughter's statements were only partially credible. (TR 20-21).

---

[2]The ALJ initially identifies December 31, 2010, as Plaintiff's last-insured date, but also identifies September 30, 2012, as the last-insured date. (TR 14). Given the agency's previous determination that Plaintiff was insured for Title II benefits through September 30, 2012 (TR 158), the undersigned finds that the 2010 date reflects a scrivener's error only.

5

The ALJ's decision also reflects consideration of Dr. Calenzani's August 30, 2010 written assessment of Plaintiff's RFC (TR 491-498), and the ALJ provided reasons for giving the opinion "little weight." (TR 22).

Reaching step four of the well-established sequential analysis required of administrative factfinders, the ALJ found that Plaintiff had the RFC to perform her past relevant work as a general clerk and a file clerk. Further, the ALJ found that "[t]hese occupations are not highly complex and do not involve work with the general public." (TR 22). The ALJ noted that the step four finding was consistent with the VE's testimony at the hearing and found that this testimony was "credible, persuasive, and consistent with" information found in the U.S. Department of Labor's *Dictionary of Occupational Titles* ("DOT"). (TR 22). Based on these findings, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act. (TR 22-23).

The Appeals Council denied Plaintiff's request for review, and therefore the ALJ's decision is the final decision of the Commissioner. See 20 C.F.R. §§ 404.981, 416.1481; Wall v. Astrue, 561 F.3d 1048, 1051 (10th Cir. 2009).

## II. Standard of Review

In this case, judicial review of the final Commissioner's decision is limited to a determination of whether the ALJ's factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. Wilson v. Astrue, 602 F.3d 1136, 1140 (10th Cir. 2010); Doyal v. Barnhart, 331 F.3d 758, 760 (10th Cir. 2003). "Substantial evidence is such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007). The "determination of whether the ALJ's ruling is supported by substantial evidence must be based upon the record taken as a whole. Consequently, [the Court must] remain mindful that evidence is not substantial if it is overwhelmed by other evidence in the record." Wall, 561 F.3d at 1052 (citations, internal quotation marks, and brackets omitted).

III. Resolution of Conflicts between VE's Testimony and DOT

At Plaintiff's administrative hearing, the VE testified that Plaintiff's previous job as a general clerk was semiskilled, light work with an SVP[3] of 3 and her previous file clerk position was also semiskilled, light work with an SVP of 3. (TR 55). The ALJ posed a hypothetical inquiry to the VE to obtain job information for an individual with the same age, education, and work experience of Plaintiff. (TR 55). This individual, according to the ALJ's hypothetical, could not work with the general public but could work with supervisors and co-workers on a superficial, work-related basis, and would be limited to the performance of simple tasks. (TR 55-56).

In response to this inquiry, the VE testified that this individual could perform Plaintiff's previous jobs as a file clerk and general clerk. (TR 56). The VE testified that these jobs were not described differently than the same jobs described in the DOT. (TR 56).

Social Security Ruling ("SSR") 00-4p "requires that an ALJ must inquire about and

---

[3]The abbreviation SVP stands for specific vocational preparation.

resolve any conflicts between a Vocational Expert's (VE) testimony regarding a job and the description of that job in the [DOT]." Poppa v. Astrue, 569 F.3d 1167, 1173 (10th Cir. 2009). See Haddock v. Apfel, 196 F.3d 1084, 1087 (10th Cir. 1999)("[B]efore an ALJ may rely on expert vocational evidence as substantial evidence to support a determination of nondisability, the ALJ must ask the expert how his or her testimony as to the exertional requirements of identified jobs corresponds with the [DOT], and elicit a reasonable explanation for any discrepancy on this point.").

Plaintiff asserts that there was a conflict between the VE's testimony and the DOT because the job of general clerk requires working with people, according to the DOT's job information for this position described at DOT 209.562.010. The Commissioner responds that even though the DOT job description for the job of general clerk may require some interaction with people, the job description states that such interaction is not significant, and, in any event, Plaintiff has not demonstrated any conflict between the DOT and the VE's testimony with respect to her previous job as a file clerk.

Plaintiff refers to the DOT's occupational code for the general clerk position, which indicates at the fifth digit that the position requires a level "6" of "people" function, and this level of functioning is defined as "Speaking-Signaling: Talking with and/or signaling people to convey or exchange information. Includes giving assignments and/or directions to helpers or assistants." DOT II, App. B, at 1005-1006. This job information does not indicate that a general clerk position requires working with the public.

In any event, even assuming the DOT description for the general clerk position

requires working with the public and that the ALJ erred by failing to resolve the conflict between the VE's testimony and the DOT, reversal of the Commissioner's decision is not warranted because the ALJ found that Plaintiff retains the ability to perform her previous file clerk job. Thus, the ALJ's error, if any, is harmless.

Plaintiff asserts that a second unresolved conflict exists between the VE's testimony and the DOT with respect to Plaintiff's ability to perform her previous jobs of file clerk or general clerk because, according to the DOT, these jobs require a reasoning level of three. See DOT 209-562.010 (general clerk); DOT 206-387-034 (file clerk I); 2 DOT, App. C, at 10111(level-three reasoning means a claimant can "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions [and d]eal with standardized situations with occasional or no variables in or from these situations encountered on the job").

The VE testified that Plaintiff's previous general clerk and file clerk jobs would fall within the ALJ's RFC limitation posed in the hypothetical inquiry to "simple tasks." (TR 56). However, the ALJ did not include a limitation to "simple tasks" in the final RFC determination. Rather, in the ALJ's decision the ALJ found that Plaintiff's RFC was limited to the performance of simple and some complex tasks. (TR 19). The ALJ's RFC finding set forth in the decision is supported by substantial evidence in the record. The agency's medical consultant, Dr. Lochner, found, based on the psychologist's review of the medical record, that Plaintiff's mental impairment did not foreclose all work activity and that she could perform jobs requiring simple and some complex tasks. (TR 458). Thus, any error in

9

the VE's testimony is harmless.

The ALJ's RFC finding in the decision of an ability to perform simple and some complex tasks would appear to include jobs requiring a level-three reasoning ability. Cf. Hackett v. Barnhart, 395 F.3d 1168, 1176 (10th Cir. 2005)(holding that a limitation to simple and routine work tasks was inconsistent with level-three reasoning but consistent with demands of level-two reasoning). Plaintiff has not demonstrated otherwise.

Plaintiff has the burden of proving that she cannot return to her past relevant work. Andrade v. Secretary of Health & Human Servs., 985 F.2d 1045, 1050 (10th Cir. 1993). In this case, the ALJ discounted Plaintiff's credibility for reasons well supported by the medical and nonmedical evidence in the record. Plaintiff has not challenged the credibility determination or the determination that Dr. Calenzani's medical source opinion was entitled to little weight. She has not pointed to evidence in the record demonstrating that because of her bipolar disorder she is unable to perform her previous file clerk job.

Therefore, the Commissioner's decision that Plaintiff is not disabled because she retains the ability to perform at least one of her previous jobs is supported by substantial evidence in the record, and the decision should be affirmed.

RECOMMENDATION

In view of the foregoing findings, it is recommended that judgment enter AFFIRMING the decision of the Commissioner to deny Plaintiff's applications for benefits. The parties are advised of their respective right to file an objection to this Report and

Recommendation with the Clerk of this Court on or before _____ March 27th, 2014, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The failure to timely object to this Report and Recommendation would waive appellate review of the recommended ruling. Moore v. United States, 950 F.2d 656 (10th Cir. 1991); cf. Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed herein is denied.

ENTERED this ___7th___ day of ___March___, 2014.

*[signature]*
GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE